# HATTIE E. CRARY, Appellant, v. NIELL B. FIELD, Executor, et al., Appellees.

### SYLLABUS BY THE COURT.

1. FORMER APPEAL—LAW OF THE CASE.—That the former decision of this court in this case, upon substantially the same evidence, is the law of the case, and will not be reviewed.

2. COMMUNITY PROPERTY—PRESUMPTION AS TO.—Where a husband remained in undisputed possession of community real estate from the death of his wife, in April, 1868, until 1882, when he sold the same without objection to a *bona fide* purchaser for value, the law will presume that the sale was lawfully made and this presumption will prevail to protect the title of such purchaser, whether there were community debts at the death of the wife or not, in a suit by the heirs of the wife.

*Appeal* from the District Court of Bernalillo county, Second Judicial District.   Reversed.

Facts are stated in the opinion.

CHILDERS & DOBSON for appellant.

1.   We insist the court has fully adjudicated the principles of law applicable to this case, and that in accordance therewith judgment should have been rendered in favor of the defendant.   When so adjudicated they become final so far as this case is concerned.   Judge Feld thus states the rule:

"A previous ruling by the Appellate Court upon a point distinctly made may be only authority in other cases, to be followed and affirmed, or to be modified or overruled according to its intrinsic merits, but in the case in which it is made it is more than authority; it is a final adjudicaton, from the consequences of which the court can not depart,

nor the parties relieve themselves." Phelan v. San Francisco, 20 Cal. 45.

The authorities are uniform on this question. We cite the following: Washington Bridge v. Stewart, 3 How. 413, and cases there cited.

The Supreme Court of Vermont thus discusses it:

"The question then is, will this Court revise a former decision made by the same court in the same cause, and on substantially the same state of facts? Such a decision presses itself upon the consideration of the court with a two-fold force. First, as an authority, as though it was a decision made in any other case; second, as an adjudication between the same parties—not as one that is conclusive, as a matter of law, for the court may revise and reverse it, but an adjudication that practically is to be regarded as having much the same effect. The rule has long been established in this state, often declared from the bench, and we believe uniformly adhered to, that in the same case this court will not revise or reverse their former decisions. It is urged (and the same argument is made in the case at bar), and there is force in the argument, that if there is error in the decision, and it is ever to be reversed, it should be done in the same Court. Although this position may be sound in theory, as applicable to a single case, yet, as a rule to be acted upon in all cases, it would lead to incalculable mischief. If all questions that have ever been determined by this court are to be regarded as still open for discussion and revision in the same cause, there would be no end to their litigation, until the ability of the parties, or the ingenuity of their counsel was exhausted. A rule that has been so long established and acted upon, and that is so important to the practical administration of justice in our courts, we think should not be departed from. And whatever views the different members of this court may entertain as to the soundness of the former decision, we all agree that the doctrine there enunciated is to be regarded as the law of this case." Stacy v. Railroad Co., 32 Vt. 552. See also, Portland Trust Co. v.

Coulter (Oregon), 31 Pac. Rep. 280; Chicago, B. & Q. R. R. Co. v. Hull (Ill.), 40 N. W. 280; Heffner v. Brownwell (Iowa), 39 N. W. Rep. 640; Hiatt v. Brooks (Nebraska), 22 N. W. Rep. 73; West v. Douglass (Ill.), 34 N. E. Rep. 141; Mynning v. Railroad Co. (Michigan), 35 N. W. Rep. 811; Collins v. North British, etc. (Tennessee), 19 S. W. Rep. 525; Kibler v. Bridges (South Carolina), 5 S. C. 335; Thomson v. Albert (Maryland), 15 Md. 268; Hawley v. Smith (Indiana), 45 Ind. 183; Davidson v. Dallas (California), 15 Cal. 75; Huffman v. State (Alabama), 30 Ala. 532; Vogel v. Little Rock (Arkansas), 19 S. W. Rep. 13; Parker v. Pomeroy, (Wisconsin) 2 Wis. 84; Dyer v. Ambleton (Arkansas), 19 S. W. Rep. 574; Warden v. McKinnon (North Carolina), 5 S. E. Rep. 917; Bane v. Wick (Ohio), 6 Ohio St. 13; Stacy v. Vermont (Vermont), 32 Vt. 551; Routt v. Greenwood, etc. (Colorado), 31 Pac. Rep. 858; Palmer v. Murray (Montana), 19 Pac. Rep. 553; Adams v. Fisher (Texas), 6 S. W. Rep. 772; Sump v. Hornback (Missouri), 18 S. W. Rep. 37; Redpath v. Lawrence, 48 Mo. App. 427; Norton v. Moshier (Illinois), 28 N. E. Rep. 463.

2. What did the court decide to be the law in this case?

The court quotes from Cook v. Norman, 50 Cal. 633, as follows:

"In passing upon the right of the surviving husband to sell the community property for the payment of debts, said: 'The principal question, however, is whether a purchaser in good faith from the surviving husband, under such circumstances, is bound to show, in order to support his title as against a child of the community, that the sale of the premises conveyed to him was, in point of fact, necessary to provide for the payment of the community debts; and this question must, we think, be answered in the negative. The authority to sell the property of the community belongs to him as the survivor of the community, and is the same in its nature as was his power to do so during the existence of the community. The death of the wife did not deprive

him of his power in this respect, and the purchaser dealing with him in good faith acquired a title valid in point of law, as though the community had not been dissolved.' Febrero declares that 'there must be deducted all legimate debts which the husband or wife with his permission, or both jointly, may have contracted on account of the conjugal partnership, and which must be paid out of the ganancial property, and that the residue is only divisible, and is what is called the 'inheritance'.'

"It does not appear that the husband was divested of his control over the community estate for the payment of its debts by any legislative act in existence at the time of the death of Clara Candelaria. The statute directing administrations, and declaring the distribution of the inheritance, does not either expressly or by implication modify the status of the heirs at the death of their mother. The one prescribes the qualifications of the administrator, and the other apportions the estate after the payment of the debts for which it is liable."

The court then concludes:

"That the Spanish law, as hereinbefore announced, as to the property rights of married persons, prevailed in 1868 in the Territory of New Mexico, is our conclusion; and that its application to this case is consonant with justice seems palpable. It does not appear that the property involved was not sold for an adequate consideration to pay the community debts. It is not pretended that there was collusion or fraud in the disposition of it by Montano, or that the contract value was not paid. It does not appear that the proceeds were not properly applied. It is not shown that if Clara Candelaria did not receive a proportion of the said proceeds, even if sold for partition, the community estate has been so administered and distributed that she can not procure her share of it without damage to an innocent purchaser; nor is it shown that, if she has been deprived of her rights she can not secure redress upon the bond of the administration. The presumptions of the law, not having been repelled,

must be applied, and they seem to preclude a reasonable doubt that the title of the plaintiff in error is paramount, and must be sustained. We do not deem it necessary to consider any other issue presented by opposing counsel. The judgment of the lower court is reversed and remanded for a new trial of this cause."

It is difficult to see how the judgment in this case can stand under these enunciations of the law. An examination of the case of Cook v. Norman, 50 Cal. 633, shows that it was a suit in ejectment, and thus the court held that the suit could not be maintained; that the remedy was against the surviving husband for an accounting. Examination of the case and the authorities shows it to be a correct enunciation of law when not modified by statute, and our Supreme Court has held that it was not so modified in New Mexico when Candelaria Montano died, nor was it so modified when the surviving husband sold the land.

F. W. CLANCY for appellees:

The additional evidence presented on the second trial, repels the presumption upon which this court reversed the case.

There is but a single point to be made on behalf of appellees and that will be decisive of the case. On the former hearing the judgment was reversed and the case remanded for a new trial. The only thing which can clearly be extracted from the former opinion of the court is that it is a presumption of law that the sale evidenced by the deed made by Miguel Montano in 1882, more than thirteen years after the death of his wife, Clara Candelaria, was made for the purpose of obtaining money to pay debts of the marriage community of Montano and his wife, and that this presumption not having been repelled, must be applied and the sale held valid. Obviously, the case was remanded for the purpose of permitting the plaintiffs to present evidence, if possible, to repel this presumption of law. Such evidence was presented, and the court below held that the evidence

was sufficient. No counter-evidence was presented on behalf of the defendant below, and this court will not disturb the finding of the court below that "At the time of the death of Clara Candelaria there were no debts of the marriage community theretofore existing between her and the said Miguel Montano," unless it can be made to appear that there was absolutely no evidence to support this finding. Hepburn v. Dubois, 12 Pet. 376; Zeller v. Eckert, 4 How. 298; Lancaster v. Collins, 115 U. S. 225; R. R. Co. v. Ohle, 117 U. S. 128-9; Boogher v. Ins. Co., 103 U. S. 97; Lynch v. Grayson, 5 N. M. 499-500.

Adverting to the fact that the presumption established by this court of the existence of community debts must have become somewhat attenuated and weakened by the lapse of more than thirteen years after the dissolution of the marriage community before the sale was made, and also to the fact that no affirmative evidence of the existence of any such debts has ever been produced, we proceed to a consideration of the only question involved, and that is as to whether there is any evidence now in the record to support the finding of the court that there were no debts of the marriage community as a matter of fact.

The deed made by Miguel Montana was signed by himself in his own right and for minor heirs, and also by Nicolas Lucero and his wife, Candelaria Montano, a daughter of Miguel Montano, and by Nicolas Apodaca and his wife, Ruperta, another daughter of Miguel Montano. The consideration recited in the deed is $2,500. On the last trial of the case Nicolas Lucero was called as a witness, and he testified in substance that he was the same Nicolas Lucero who signed the deed; that his wife received a portion of the proceeds of the sale evidenced by that deed, and that his recollection was that she received about $350; that the wife of Nicolas Apodaca received the same amount that the wife of witness received; that his father-in-law made the sale; that before the making of the bargain he talked about it with the witness and his wife, and a few days afterwards came and told his daughters he could not get the money without their signatures, and that then they signed and he

received the money; that he, witness, believed the sale was not made for the purpose of paying any debts, but because it was a good bargain; that he never knew of any debts owed by Miguel Montano and Clara Candelaria; that he would have known of such debts unless there was something hidden from him. On cross-examination he showed that he had been married four or five years when his mother-in-law died; that at the time of her death he did not know whether Miguel Montano owed Mariana Yrisarri some money or not; that he never heard anything about that from anyone; that his father-in-law had business relations with Don Mariano, but that he never knew of his owing anything to him and did not know whether he owed him or not; that he may have owed debts, but he never told him, the witness, about them; that he may have told him something, but that he did not remember as it had been a long time.

It is to be remembered that this witness was examined in person before the judge of the court below, who had an opportunity to see and hear him testify, observe his demeanor while on the stand, and could form a better and more reliable opinion of the extent and sufficiency of his knowledge and information as to the subject testified about than can possibly be derived from any examination in cold print of the words of his evidence. It certainly must be admitted that the record discloses evidence to support the finding of the court. The quantity of evidence necessary to establish the existence, or rather the non-existence, of a fact more than thirty years after the date to which the inquiry is directed, certainly ought, to a considerable extent, to be left to the discretion of the trial court. Moreover, it is not to be forgotten that no evidence whatever was presented on the other side.

McFIE, J.—This case is now before the court for the second time. The former trial in the court below resulted in a judgment in favor of the plaintiffs, appellees in this case, and the defendant, Hattie E. Crary, sued out a writ of error to this court.

This court heard the case upon its merits, as shown by the testimony and briefs of counsel, and on the second day

of October, 1897, filed an opinion reversing and remanding the cause. 50 Pac. Rep. 342.

Upon the second trial in the court below, the testimony taken at the former trial was admitted as evidence, by agreement, and the appellees here introduced but one additional witness, Nicolas Lucero; and the court, who tried the case without a jury, rendered judgment for the appellees in this court. Hattie E. Crary, the appellant, appealed from this decision, brought the record here, and upon the hearing it was agreed that the record and briefs used in this court on the former hearing should be made a part of the record at the present hearing.

There is one point in this case upon which counsel seem to agree, and that is, that the former decision of this court, if upon substantially the same evidence so far as it states the law, is the law of this case, and will not be reviewed by the court at this hearing. The appellees admit this to be the general rule of law, but contend that the evidence in this record is substantially different, and that where such is the case, the rule of law above stated, is not applicable.

FORMER appeal: law of the case.

The rule of law above referred to (and which seems to be the settled law) is fairly stated in the case of Phelan v. San Francisco, 20 Cal. 45, as follows:

"A previous ruling by the Appellate Court upon a point distinctly made may be only authority in other cases, to be followed and affirmed, or to be modified or overruled according to its intrinsic merits, but in the case in which it is made it is more than authority; it is a final adjudication, from the consequence of which the court can not depart, nor the parties relieve themselves."

The Supreme Court of Vermont, in the case of Stacy v. Railroad Company, 32 Vt. 552, in stating this rule and giving some of the reasons for adhering to it, says:

"The rule has long been established in this State, often declared from the bench, and we believe uniformly adhered to, that in the same case this court will not revise nor reverse their former decisions. If all questions that have ever been determined by this court are to be regarded as

still open for discussion and revision in the same cause, there would be no end to their litigation until the ability of the parties or the ingenuity of their counsel was exhausted."

Briefly stated, the facts are that Clara Candelaria was the wife of Miguel Montano, in 1862, when Montano acquired title by deed, and thus brought into the marriage community the real estate which is the subject of this suit. Clara died in April, 1868, leaving five children the issue of such marriage, and Miguel Montano, her surviving husband.

Miguel Montano was appointed, and on the twenty-sixth day of April, 1868, qualified, as administrator of the estate of his deceased wife. The record is silent as to any further proceedings by the administrator. Montano remained in possession of the community property without objection, continuously, until the twenty-seventh day of January, 1882, when he conveyed a part of the property to one C. W. Lewis, and on the second day of October, 1883, he sold another portion of the property to Casiana Montano ·de Sanchez, who was one of the children of Miguel Montano and wife. Casiana Montano de Sanchez became the wife of Nicholas J. Sanchez, and in 1891, they brought the original suit against the appellant and her husband, who succeeded to the Lewis title, to recover possession of an interest claimed by her (Casiana) as an heir to her mother's estate. Casiana and her husband both died while the original suit was pending, leaving a minor child, James Sanchez, as their sole survivor.

Upon suggestion of the death of the plaintiffs being made, the suit was revived in the name of Neill B. Field, executor of the estate of Casiana, and an order was made authorizing the executor to prosecute the suit as guardian and next friend of James Sanchez.

The above facts are equally applicable to the present, as well as the former case, and upon these facts this court, in its former decision, declared the facts and law of the case to be as follows:

"It appears that Miguel Montano qualified as administrator of the estate of his wife on the twenty-sixth day of

April, 1868, and that he remained in possession of the com-
munity property without interruption or objection con-
tinuously from that date until January 27, 1882, when he
conveyed a part of the property to one C. W. Lewis, and
that on the second day of October, 1883, he parted with
another portion of the property by deed to Casiana Montano
de Sanchez, but it is not shown in either case in which capacity
he was such grantor, nor does it seem material whether
he acted as survivor or administrator, as the presumption
must be that he was realizing for the purpose of discharg-
ing the community debts.  If he acted as survivor, his right
under the civil law was indisputable; and if as administrator,
he was duly authorized, and his transfer of title was valid.
That it is not shown of what the community property con-
sisted, that it is not shown that the portion of it sold was for
the discharge of the community debts, cannot affect or de-
stroy the rights of the bona fide purchaser for value.  If
Montano were abusing his trust as survivor, he should have
been restrained by those whom he was wronging; and, if
he were exceeding his authority as personal representative,
redress should have been sought upon his bond.  That
Casiana Montano de Sanchez recognized the right of her
father to sell the community property is manifest; that she
became purchaser of a part of it from him is not less true;
and that this action of hers, and the payment of purchase
money by her, indicate her approval both of the propriety
and power of his conduct, in connection with her sisters, of
converting a part of the same property into cash, may be
logically claimed; and that she was cognizant that the pro-
ceeds were rightly used, either in the payment of the debts
of the community, or in the distribution among the parties
entitled, may be fairly inferred from her failure for many
years to assert any antagonistic right in the premises."

After quoting from numerous authorities to sustain the
position announced, the court concludes as follows:

"That the Spanish law, as hereinbefore announced, as
to the property rights of married persons, prevailed in 1868
in the Territory of New Mexico, is our conclusion; and
that its application to this case is consonant with justice

seems palpable. It does not appear that the property involved was not sold for an adequate consideration to pay the community debts. It is not pretended that there was any collusion or fraud in the disposition of it by Montano, or that the contract value was not paid. It does not appear that the proceeds were not properly applied. It is not shown that if Clara Candelaria did not receive a proportion of the said proceeds, even if sold for partition, the community estate has been so administered and distributed that she cannot procure her share of it without damage to an innocent purchaser; nor is it shown that, if she has been deprived of her rights, she cannot secure redress upon the bond of the administrator. The presumptions of the law, not having been repelled, must be applied, and they seem to preclude a reasonable doubt that the title of the plaintiff in error is paramount, and must be sustained." Crary v. Field, et al. 50 Pac. Rep. 342.

It is clear, from the record, that upon the second trial of this cause in the lower court, appellees proceeded with the case upon the theory that it was sufficient for them to show that no community debts existed at the death of Clara, in 1868, and therefore but one additional witness was produced upon the trial, and by him it was attempted to be established that there were no such debts. If it were true that it was only necessary for appellees to show this, it is extremely doubtful whether the testimony of the witness, Nicholas Lucero, rises to the dignity of proof, or establishes anything on this point. There is absolutely no certainty about his testimony. He states, for instance, as to how much land was sold for, "I do not remember very well, but it seems to me they paid about $2,500 or $2,000." As to how much his wife received, he states: "It seems to me about $350," while the consideration in the deed is $312. Asked whether or not the land was sold to pay debts, he answers: "I believe it was not for the purpose of paying any debts. I think it was a good bargain and he sold the land." He then swears that he never knew of any debts they owed.

COMMUNITY property: presumption as to.

On cross-examination, the witness was asked by the court if his father-in-law, Miguel Montano, paid any money on debts which existed at the time his wife died, and to this he answered: "I know nothing of my own knowledge, whether he owed debts or not at that time; he may have owed some; he never told me; he never communicated with me about them." It is apparent from this testimony that the witness had neither knowledge or information as to whether community debts existed at the death of the wife, or not. At best, it would be but an inference, and it would seem highly improper to unsettle titles of long standing, to real estate, upon testimony of such doubtful character as this. The legal presumption should prevail, where it has the effect of quieting title, over uncertain and unreliable evidence to unsettle such title, and especially should this be so where the title involved is that of a bona fide purchaser for value, as in this case.

But if the testimony offered established the fact that no community debts existed at the death of the wife, it would make no difference in this case, as the former decision of this court has declared the title of appellant not to be subject to attack in this way.

This court has declared, as the law of the case: "That it is not shown of what the community property consisted, that it is not shown that the portion of it sold was for the discharge of the community debts, cannot affect or destroy the rights of the bona fide purchaser for value." Crary v. Field et al., 50 Pac. Rep. 342.

The Court then proceeds to define the remedy of the appellees for any supposed wrong done by the sale of the land by Montano, as follows:

"If Montano were abusing his trust as survivor, he should have been restrained by those whom he was wronging; and, if he were exceeding his authority as personal representative, redress should have been sought upon his bond."

It will be seen, therefore, that the court, in its former opinion, sustains the title of appellant, without regard to whether there were community debts or not, and in effect

declares that where the title is that of a bona fide purchaser for value, and of many years standing, it is not subject to the attack made upon it, where the parties failed to invoke the legal remedies open ·to them at the time the supposed injury was done.

The additional testimony offered upon the second trial did not substantially change the evidence upon which the first decision in this case was rendered, and therefore the law of the case remains the same.

It follows from this conclusion, that the court erred in rendering judgment for the plaintiff in the court below, but should have rendered judgment for the defendant for costs.

The judgment of the court below is reversed and the cause dismissed at appellee's cost.

Mills, C. J., and Parker, J., concur.

----

[873.   May 3, 1900.]

SYLLABUS BY THE COURT.

